2) Caption, civil cases






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
JAIME PENA,                                                     )                  No. 08-04-00305-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  346th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20030D06156)

O P I N I O N

            Jaime Pena appeals his conviction on two counts of indecency with a child by sexual contact. 
The jury assessed punishment at twenty years in prison and a $10,000 fine for each count. We
affirm.
FACTUAL SUMMARY
            On November 12, 2003, Detectives Morales and Hinojos went to the Swinford home
as part of an investigation. The detectives asked Richard Swinford if they could speak with his
twelve-year-old son, Ronald. At this time, neither Ronald nor his ten-year-old brother Collin had
made an outcry of sexual abuse. After the detectives left, Richard asked Ronald if anyone had ever
hurt him or touched him in a way that made him feel bad. Ronald denied ever being touched. 
Richard then took Collin aside and asked the same question. Collin answered yes. Richard then
asked if Appellant had touched him and again Collin replied yes. Richard spoke with Ronald again
and told him that Collin had said something happened. He repeated his question, asking if Ronald
had been touched by someone. This time Ronald said yes, and added that the person was Appellant. 
Richard called the detectives that same evening and met with them the next day at the Child
Advocacy Center. Richard gave a written statement relating what his sons had told him. The boys
were also interviewed. Detective Morales testified that after interviewing the boys and receiving the
Richard’s statement, he and Detective Hinojos obtained a warrant and arrested Appellant for two
counts of indecency with a child by sexual contact. 
            Collin and Ronald testified at trial they went together to the J&R Grocery to get some items
for their dad. The grocery was about four blocks from their home. As the boys were walking home,
Appellant approached and offered them $20 each to touch their “privates.” At first they both
refused, but then Appellant offered $20 each and a Playstation. The boys then changed their minds
and went with Appellant to a nearby alley where they allowed Appellant to put his hand down their
pants and touch their privates. Appellant first touched Ronald and then Collin, and it lasted about
five seconds for each. The boys testified that Appellant offered them a ride home and they accepted. 
They first stopped at a 7-11 where Appellant tried to use the ATM machine. When he returned to
the van, Appellant told the boys that his ATM card was not working so he could not give them the
money. Appellant dropped the boys off a block away from their home. 
            The next day, Ronald and Collin were outside playing with their father when Appellant drove
by in his blue van. He stopped across the street, and when Ronald pointed and said “that guy was
going to give us a Playstation,” Appellant drove away. Collin and Ronald followed the van and
Appellant gave them a Playstation, but they were disappointed to discover that it didn’t work.
 

EXTRANEOUS OFFENSE
            Prior to trial, the State filed a notice of extraneous offenses regarding an alleged offense 
against another child. Appellant filed a motion in limine regarding evidence about this extraneous
offense. This motion was granted and the prosecutor was instructed by the court to approach the
bench for a ruling on admissibility before offering the evidence. On appeal, Appellant contends that
he was denied due process under the Fifth Amendment of the United States Constitution because of
repeated references to an extraneous offense ruled inadmissible by the trial court, which amounted
to cumulative error and prosecutorial misconduct.
Standard of Review
            In order to preserve error for appellate review, the complaining party must make a timely,
specific objection and obtain a ruling. Wilson v. State, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002),
citing Broxton v. State, 909 S.W.2d 912, 918 (Tex.Crim.App. 1995). The objection must be made
at the earliest opportunity. Id.; Turner v. State, 805 S.W.2d 423, 431 (Tex.Crim.App.), cert. denied,
502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). And the complaining party must obtain an
adverse ruling. Turner, 805 S.W.2d at 431. The complaining party must continue to object each
time objectionable evidence is offered. Fuentes v. State, 991 S.W.2d 267, 273 (Tex.Crim.App.),
cert. denied, 528 U.S. 1026, 120 S.Ct. 541, 145 L.Ed.2d 420 (1999). The erroneous admission of
evidence will not require reversal when the same evidence was received without objection, either
before or after the complained-of ruling. Leday v. State, 983 S.W.2d 713, 718 (Tex.Crim.App.
1998).
Prosecutorial Misconduct
            To preserve error in cases of prosecutorial misconduct, the defendant must (1) make a timely
and specific objection; (2) request an instruction that the jury disregard the matter improperly placed
before the jury; and (3) move for a mistrial. Perkins v. State, 902 S.W.2d 88, 96 (Tex.App.--El Paso
1995, pet. ref’d); Tex.R.App.P. 52(a); Cook v. State, 858 S.W.2d 467, 473 (Tex.Crim.App.1993). 
Prosecutorial misconduct claims are reviewed on a case by case basis. Stahl v. State, 749 S.W.2d
826, 830 (Tex.Crim.App.1988); Perkins, 902 S.W.2d at 96. “Prosecutorial misconduct has been
found where (1) the prosecutor’s actions deliberately violated an express court order; and (2) the
prosecutor’s misconduct was so blatant as to border on being contumacious.” Perkins, 902 S.W.2d
at 96, citing Stahl, 749 S.W.2d at 831; Landry v. State, 706 S.W.2d 105, 111 (Tex.Crim.App.1985),
cert. denied, 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167 (1986). Prosecutorial misconduct may
also occur in cases where the prosecutor’s question is “clearly calculated to inflame the minds of the
jury and is of such a character so as to suggest the impossibility of withdrawing the impression
produced.” Huffman v. State, 746 S.W.2d 212, 218 (Tex.Crim.App.1988); Perkins, 902 S.W.2d
at 96. 
            The first reference occurred during the State’s direct examination of Richard Swinford:
[State]:Did they [detectives] tell you why they had come to your home?
 
[Court]:You don’t have to get into that please, sir. They’re making an
investigation, okay?
 
[State]:Okay. Is that what they told you Richard, that they were--
 
[Witness]:They were conducting an investigation. 

No objection was lodged to this statement. The second reference occurred, again without objection,
during the State’s direct examination of Detective Oscar Morales:
[State]:Now, tell the jury, Detective Morales, how you first -- how you
arrived at -- again, with what we have talked about before, how you
and your partner arrived at Richard Swinford’s home?
 
[Witness]:We had information that the defendant was seen with the Swinford 
children in his vehicle.
 
[State]:And you were -- how were you able -- well okay -- did you get an
address of where the Swinfords lived?
 
[Witness]:Yes, we did.
 
[State]:Tell the jury what you and your partner did when you went to the
home?
 
[Witness]:Well, on November 12th I went to the home, it was during the
nighttime hours, and what we did was basically went to go speak with
the children, to conduct what we call a preliminary interview to
determine if the children had actually been victims of abuse. 

The third reference occurred during the State’s direct examination of Detective Hinojos:
 
 [State]:Tell the jury how you first came to Mr. Richard Swinford’s home?
 
            [Witness]:       While investigating another case.
 
[Defense]:Your Honor, I object that violates our motion in limine.
 
[Court]:Well, ladies and gentlemen, I told you how to telescope our case. 
We’re not interested in how it got there, we’re only interested in when
he got there, okay? And do not discuss or speculate as to how he got
there because it goes into a whole bunch of other stuff that we don’t
need to know about, schools and things of that nature, okay? So we’ll
leave it there and once it gets there then we’re interested in it’s prior
to getting there, no. Proceed on.
 
[Defense]:Your Honor, but with all due respect I need a ruling on that motion.
 
[Court]:I think I have sustained it, but I also have given instructions.
 
[Defense]:Can I have a motion to disregard the answer?
 
[Court]:I’ve told the jury to disregard and not to discuss the same during
deliberations. The motion for mistrial is overruled. Thank you. 

            The defense moved for mistrial after the State rested, and the court denied it. The fourth
reference occurred during the State’s closing argument, yet the defense again failed to object:
[State]:Further, remember back to the testimony, how did they arrive at the
Swinford’s house? Because they had found out that Ronald had been
seen in the defendant’s blue van. That’s evidence before you that was
testified to by the detectives. That’s how they first wound up and got
the Swinfords involved.

We conclude that Appellant neglected to timely and specifically object to the first, second, and fourth
references and has therefore failed to preserve error for appellate review. We turn now to the third
reference. 
            Appellant alleges prosecutorial misconduct because the prosecutor referenced the extraneous
offense in violation of the order in limine. Evidence of extraneous crimes or bad acts that a
defendant may have perpetrated cannot be introduced at the guilt-innocence phase to show the
defendant acted in conformity with his criminal nature and therefore committed the offense for
which he is on trial. Tex.R.Crim.Evid. 404(b); Lockhart v. State, 847 S.W.2d 568, 571
(Tex.Crim.App. 1992), cert. denied, 510 U.S. 849, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993); Loya v.
State, No. 08-98-00429-CR, 2000 WL 1231494 at *2 (Tex.App.--El Paso August 31, 2000, pet.
ref’d)(not designated for publication). However, extraneous offenses may be admitted for other
purposes, such as to prove “motive, opportunity, intent, preparation, plan, knowledge, identity, or
absence of mistake or accident.” Tex.R.Crim.Evid. 404(b); Lockhart, 847 S.W.2d at 571; Loya,
2000 WL 1231494 at *2. Evidence of extraneous offenses may be admissible as relevant evidence
in order to explain the context of the charged offense where the extraneous offenses are indivisibly
linked to the charged offense and necessary to the State’s case in proving the offense for which the
defendant is on trial. Lockhart, 847 S.W.2d at 571; Loya, 2000 WL 1231494 at *3. 
            An improper reference to an extraneous offense occurs where the evidence shows a crime
or bad act, and that the defendant was connected to or involved in it. Holmes v. State, 962 S.W.2d
663, 672 (Tex.App.--Waco 1998, pet. ref’d, untimely filed). “Evidence of an extraneous offense
must necessarily involve evidence of prior criminal conduct by the accused.” McKay v. State, 707
S.W.2d 23, 31-32 (Tex.Crim.App. 1985), cert. denied, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164
(1986); Nguyen v. State, 177 S.W.3d 659, 667 (Tex.App.--Houston [1st Dist.] 2005, pet. ref’d). 
Evidence of an extraneous offense is not established if the evidence presented does not show an
offense was committed or fails to connect the defendant to it. Id. at 32; Nguyen, 177 S.W.3d at 667. 
The evidence here only showed that the detectives were investigating another case, and did not
establish that Appellant was involved in that investigation or that he had committed another offense. 
(Nor did the testimony reveal what offense the detectives were investigating. Thus, no improper
extraneous offense was admitted. McKay, 707 S.W.2d at 32.
            The general rule regarding the asking of an improper question is that error may be cured or
rendered harmless by its withdrawal or by an instruction to disregard. Huffman, 746 S.W.2d at 218.
After the prosecutor asked the witness how he came to the Swinford home, and the witness replied,
“[w]hile investigating another case,” Appellant timely objected and error was cured when the judge
instructed the jury to disregard the answer. Even if the exchange between prosecutor and witness
were an improper reference to an extraneous offense, the prompt instruction to disregard rendered
the error harmless. Kemp v. State, 846 S.W.2d 289, 308 (Tex.Crim.App. 1992), cert. denied, 508
U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993)(holding testimony referring to or implying
extraneous offenses can be rendered harmless by an instruction to the jury to disregard, unless the
evidence was so clearly calculated to inflame the minds of the jury or is of such character as to
suggest that it would be impossible to remove the harmful impression from the minds of the jury);
Coe v. State, 683 S.W.2d 431, 435-36 (Tex.Crim.App. 1984)(holding instruction to disregard cured
error resulting from witness’s reference to “other robberies” suggesting the appellant had committed
them); Lachapelle v. State, 579 S.W.2d 1, 1-2 (Tex.Crim.App. 1979)(explaining that a prompt
instruction to disregard cured any error arising out of witness’s reference to another case that
suggested the defendant had committed another crime).
            Appellant has failed to show that the prosecutor’s question was clearly calculated to inflame
the minds of the jury or that it was of such a character so as to suggest the impossibility of
withdrawing the impression produced. Huffman, 746 S.W.2d at 218. Appellant also offers no
evidence that the prosecutor deliberately violated an express court order. Perkins, 902 S.W.2d at 96. 
While the State elicited information that the detectives were investigating a case, the prosecutor did
not question the detectives in detail about the investigation, nor imply that Appellant was involved
in the investigation. Further, the testimony had previously been admitted without objection. Leday 
v. State, 983 S.W.2d 713, 718 (Tex.Crim.App. 1998)(stating erroneous admission of evidence will
not require reversal when other such evidence was received without objection, either before or after
the complained-of ruling). 
Cumulative Error
            Multiple errors may be harmful in their cumulative effect. Chamberlain v. State, 998 S.W.2d
230, 238 (Tex.Crim.App. 1999), cert. denied, 528 U.S. 1082, 120 S.Ct. 805, 145 L.Ed.2d 678
(2000). “Cumulative error, however, concerns performance of a harm analysis once multiple errors
have been established.” Duran v. State, No. 08-01-00512-CR, 2003 WL 195072 at *4 (Tex.App.--El Paso Jan. 30, 2003, no pet.)(not designated for publication), citing Chamberlain, 998 S.W.2d at
238. Non-errors in their cumulative effect cannot cause error. Chamberlain, 998 S.W.2d at 238;
Webber v. State, No. 08-03-00177-CR, 2004 WL 804766 at *13 (Tex.App.--El Paso Apr. 15, 2004,
pet. ref’d)(not designated for publication). Appellant waived error in failing to timely and
specifically object to three of the four references, and the trial court cured any error when it
instructed the jury to disregard the statement to which he objected. See Duran, 2003 WL 195072
at *4 (holding the doctrine of cumulative error is inapplicable where appellant has waived error). 
Appellant’s sole point of error is overruled.

August 31, 2006                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)